**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GREGG GARLOCK,** | ) | **CASE NO. 1:13CV02200** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **THE OHIO BELL TELEPHONE** | ) | **OPINION AND ORDER** |
| **COMPANY INC., ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

Before the Court is Defendant AT&T Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed on January 9, 2014 (ECF DKT #10). On November 4, 2013, Plaintiff filed his First Amended Complaint with the Court (ECF DKT # 4) (hereafter, "Complaint"). For the reasons stated below, the Court GRANTS Defendant AT&T Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction.

**I. PROCEDURAL BACKGROUND**

Plaintiff, Gregg Garlock ("Plaintiff"), alleges that his employer, Defendant, The Ohio Bell Telephone Company Inc. (hereafter "Ohio Bell"), refused to accommodate his reasonable accommodation of a reduced work schedule and Family Medical Leave Act (FMLA) leave.

(Complaint, ¶¶ 39-41).  Plaintiff brings claims of FMLA interference, FMLA Retaliation, Disability Discrimination and Denial of Reasonable Accommodation under FMLA.  (Complaint ¶¶ 64-99).  Plaintiffs seek to recover compensatory damages, liquidated damages, punitive damages, attorneys fees, court costs, equitable relief and injunctive relief.  (Complaint, at 12).

## II. FACTS

According to the Complaint, Plaintiff first began to experience stress-induced panic attacks around March 2011.  (Complaint ¶34).  Prior to these first panic attacks, Plaintiff often worked over sixty hours per week in his positions as Customer Service Specialist and U-Verse Premise Technician at the Ohio Bell Field Operations Office located in Highland Heights, Ohio.  (Complaint ¶¶ 33-35).  In April 2011, Plaintiff was diagnosed with anxiety disorder, and in June 2011 he was diagnosed with panic disorder.  (Complaint ¶¶ 36-37).  Subsequently, in June 2011, Plaintiff sought FMLA leave on an intermittent basis and a reduced work schedule of eight hours a day and forty hours a week from his employer.  (Complaint ¶ 38).  This request was processed and denied by AT&T Services, Inc.  (Complaint ¶¶ 39-41).  Plaintiff's treating Psychiatrist informed him that while he was on FMLA leave he should participate in whatever activities reduced his anxiety.  (Complaint ¶ 42).  Plaintiff claims that playing drums in his band was the most effective way to reduce his stress levels.  (Complaint ¶ 43).  Plaintiff took FMLA leave from June 2011 through October 2011.  (Complaint ¶ 45).  Plaintiff learned that Defendants investigated Plaintiff during his FMLA leave.  (Complaint ¶ 46).   On about November 5, 2011, Defendants suspended Plaintiff pending his termination, giving the reason that he abused his medical leave by playing in his band.  (Complaint ¶ 49).  After suspending Plaintiff from November 14, 2011 through November 27, 2011, Defendants made Plaintiff sign a Back to

2

Work Agreement. (Complaint ¶¶ 55-56). Then, in February 2012, Defendants fired Plaintiff for alleged pretextual reasons: false claims that Plaintiff was improperly charging clients for work performed. (Complaint ¶¶ 61-62).

Plaintiff filed suit against Ohio Bell, AT&T Corp., AT&T Teleholdings, Inc., AT&T Datacomm, Inc., AT&T Capital Holdings, Inc., AT&T Services, Inc. and AT&T Inc. (ECF DKT Nos. 1 & 4). Plaintiff has dismissed AT&T Corp., AT&T Teleholdings, Inc., AT&T Datacomm, Inc. and AT&T Capital Holdings, Inc. (ECF DKT No. 4). Plaintiff refuses to dismiss AT&T Inc. despite Defendants' requests to dismiss AT&T Inc. as an improper party. (ECF DKT No. 12-2). Ohio Bell, Plaintiff's direct employer, is a wholly-owned subsidiary of AT&T Inc. (Complaint ¶ 6). AT&T Services Inc. is also a wholly-owned subsidiary of AT&T Inc. (Complaint ¶ 6). AT&T is a publicly traded Delaware corporation with its principal place of business in Texas. (Complaint ¶ 9). Plaintiff alleges in his Complaint that AT&T Inc. holds itself out to the public via advertising, as a provider of telecom services and does not distinguish services which it offers through its subsidiaries, such as Ohio Bell. (Complaint ¶¶ 10-11). Plaintiff contends that AT&T Inc. exercises control over its subsidiaries, including Ohio Bell and AT&T Services, Inc., at a level that exceeds the control normally exercised by a parent company over its subsidiaries in order to maintain separate and distinct corporate entities. (Complaint ¶ 12). Plaintiff alleges that all revenues from Ohio Bell go directly to AT&T Inc. and are reported as such in AT&T's public SEC filings. (Complaint ¶ 13). Plaintiff believes that Ohio Bell and AT&T Inc. share common management, officers, directors and/or board members as well as offices and other resources and employees. (Complaint ¶¶ 16-19). Plaintiff alleges that customers are billed by AT&T Inc. for services rendered by employees of Ohio Bell.

3

(Complaint ¶ 20).  Plaintiff charges that each of the AT&T defendants interchangeably uses the AT&T logo.  (Complaint ¶ 17).  Plaintiff asserts that Ohio Bell and AT&T Services Inc. share an office located at 45 Erieview Plaza, Cleveland, Ohio 44114.  (Complaint ¶ 18).  AT&T Services Inc. processes and investigates FMLA requests for all AT&T Inc. subsidiaries, including Ohio Bell, as directed by AT&T Inc.  (Complaint ¶ 24).  Plaintiff alleges that AT&T Inc. determines the employment policies and Code of Business Conduct for its subsidiaries, including Ohio Bell.  (Complaint ¶ 23).  Finally, Plaintiff states that job positions working for AT&T Services Inc. and Ohio Bell, including the particular job position held by Plaintiff, are advertised on AT&T Inc.'s website.  (Complaint ¶¶ 25-26).

### III. ISSUE

Defendant AT&T Inc. filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  (ECF DKT No. 10).  Specifically, AT&T Inc. asserts that the Court should dismiss it because it is not a proper Defendant in this case.  (ECF DKT No. 10-1, at 1).  Defendant, AT&T Inc. asserts that, as solely a holding company, it has no contacts in Ohio and does not transact any business in Ohio that would provide the requisite personal jurisdiction in this Court.  (ECF DKT No. 10-1, at 1-2).  Plaintiff filed a Brief in Opposition on February 14, 2014, alleging that AT&T Inc. has sufficient business contacts in Ohio to establish personal jurisdiction (ECF DKT # 17).  Defendant, AT&T Inc., filed a Reply Brief in Support of its Motion to Dismiss on February 27, 2014, which addressed each of Plaintiff's arguments and restated AT&T Inc.'s original arguments.  (ECF DKT # 18).

### IV. LAW AND ANALYSIS

**A. Legal Standard**

4

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the court applies a two-step inquiry when examining if it has personal jurisdiction over the parties. "First, we must determine whether Ohio law authorizes jurisdiction. If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota*, 545 F.3d 357, 361 (6th Cir. 2008). Where personal jurisdiction is challenged in a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that personal jurisdiction exists. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974). However, the nature of plaintiff's burden changes depending on the manner in which the district court approaches the motion. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988). When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, . . . and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]" *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods., & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Plaintiff need only establish jurisdictional claims with "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to plaintiff. *Id*. The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff must set forth specific facts showing that the court has jurisdiction. *Id*. Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89

5

F.3d 1257, 1262 (6th Cir. 1996).

**B. Personal Jurisdiction**

Plaintiff bears the burden of establishing the Court's exercise of personal jurisdiction over Defendant AT&T Inc. meets the requirements of both Ohio's long-arm statute and the limits of the Constitutional Due Process Clause. *Id*. Ohio's long-arm statute does not extend to the constitutional limits of the Due Process Clause; therefore, this becomes a threshold issue to determine jurisdiction. *Calphalon Corp. V. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

**1. Ohio's Long Arm Statute**

The pertinent section of the Ohio long-arm statute reads:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
        (1) Transacting business in this state ; [or]
        (2) Contracting to supply services or goods in this state; [or]
        (3) Causing tortious injury by an act or omission in this state.

Plaintiff asserts that jurisdiction is proper in Ohio under sections (1), (2), and (3). Plaintiff contends that Defendant AT&T Inc. is implicated under the Ohio long-arm statute both by conducting business in Ohio through its own actions and by the actions of Ohio Bell as an agent of AT&T Inc.

**a. Plaintiff Fails to Establish That AT&T Inc. Conducts Business in Ohio or Contracts for the Supply of Goods or Services in Ohio**

First, Plaintiff contends that AT&T Inc. is subject to personal jurisdiction in Ohio by transacting business in Ohio and by contracting for the supply of goods or services in Ohio. While Plaintiff's Complaint contains assertions which are sufficient to establish that AT&T Inc. transacted business in Ohio, the Court is required to evaluate Defendant's Motion to Dismiss for Lack of Personal Jurisdiction under the standard which requires Plaintiff to support personal

6

jurisdiction by written materials to support his factual assertions. *Theunissen*, 935 F.2d at 1458. The written materials relied upon by Plaintiff in arguing that AT&T Inc. transacts business in Ohio are a press release stating that AT&T is investing $225 Million in Ohio wireless and wireline networks via a project called Project Velocity IP. (ECF DKT No. 17-3). Plaintiff also provides an executive bio of Lori Lee, identified as Senior Executive Vice President - Home Solutions, providing that Lee is the leader of Project Velocity IP. (ECF DKT No. 17-4). Finally, Plaintiff also provides a State of Changes in Beneficial Ownership SEC filing, filed by Lori Lee, providing that she is "Sr. Exec. VP - Home Solutions" of AT&T Inc. (ECF DKT No. 17-7). Upon closer look, the press release provided by Plaintiff includes an asterisk next to the first mention of AT&T. The asterisk references the statement that: "AT&T products and services are provided or offered by subsidiaries and affiliates of AT&T Inc. under the AT&T brand and not by AT&T Inc." (ECF DKT No. 17-4). This statement shows that it is AT&T Inc.'s subsidiaries and affiliates that are conducting business in Ohio, not AT&T Inc. itself. Furthermore, both the executive bio of Lori Lee and the SEC filing provide that Lori Lee is Senior Executive Vice President of Home Solutions. However, Defendant provided the affidavit of AT&T Services Inc.'s Executive Director of Payroll, Michelle Zollmann, stating that Lori Lee is actually the Senior Executive Vice President with AT&T Services, Inc. and she has never been an employee of AT&T Inc. (ECF DKT No. 18-1). Therefore, it is not clear whether Lori Lee is actually an employee of AT&T Inc. or one of its subsidiaries. Even construing the facts in the light most favorable to Plaintiff, and assuming Lee is an employee of AT&T Inc., the press release provided by Plaintiff establishing business transactions in Ohio explicitly provided that the business being conducted is through AT&T Inc.'s subsidiaries and affiliates, and not AT&T Inc.

Plaintiff provides no other written materials providing AT&T Inc. conducted business or entered into contracts for the supply of goods or services in Ohio. Thus, the Court finds that Plaintiffs do not satisfy the requirements for personal jurisdiction for Defendant AT&T Inc. under either subsection A(1) or (2) of Ohio's long-arm statute.

### b. Plaintiff Fails to Establish Defendant AT&T Inc. Caused Tortious Injury to Plaintiff in Ohio

Next, Plaintiff argues that AT&T Inc. is subject to personal jurisdiction under Ohio's long-arm statute for its actions constituting the alleged tortious injury in this case. In support of this contention, Plaintiff provides a company FMLA investigation printout and a letter allegedly written by George Ron Williams on behalf of Plaintiff, which Plaintiff alleges he was forced to sign to come back to work following his FMLA leave. (ECF DKT No. 17, at 6). The FMLA investigation printout has AT&T Inc. printed at the top and identifies Ohio Bell as the involved subsidiary. (ECF DKT No. 17-1). The letter has AT&T Inc. printed at the top, with the AT&T logo and identifies George Ron Williams as the asset protection manager with AT&T Inc. (ECF DKT No. 17-8). In Defendant's Reply Brief, it provides the Declaration of Michelle Zollman, establishing that George Ron Williams is not an employee of AT&T Inc. but rather an employee of AT&T Services, Inc. (ECF DKT No. 18-1). However, the Court must construe the written materials in the light most favorable to the Plaintiff when evaluating a motion to dismiss for lack of personal jurisdiction. *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012 WL 1066784, at *2 (N.D. Ohio Mar. 28, 2012). Therefore, the Court will evaluate this argument under the assumption that George Ron Williams is an employee of AT&T Inc. Plaintiff alleges that he was forced to sign the letter when he returned to work and did not actually write the letter himself. However, the language of the letter indicates otherwise; it states

8

that plaintiff "freely and voluntarily provide[d] the following statement . . . [and] [n]o force, threats or coercion have been made to induce [Plaintiff] to make this statement." (ECF DKT No. 17-8). Plaintiff has provided no written materials to support the contention that he was forced to sign the letter in order to come back to work. Thus, the written materials can only support the alleged facts that AT&T Inc. was informed of and assigned a representative to interview Plaintiff about his FMLA leave. Plaintiff did not provide any written materials indicating that it was AT&T Inc. that made any decisions relating to Plaintiff's FMLA rights. AT&T Inc. simply kept a record of its subsidiary's employee's FMLA leave in the ordinary course of business. This does not constitute any tortious act in Ohio; in fact, "covered employers who have FMLA-eligible employees are subject to certain record-keeping requirements, and must maintain records that must disclose, inter alia, dates on which FMLA leave is taken, the hours of leave taken if leave is taken in increments of less than one full day, and records of any dispute between the employer and employee concerning the designation of leave as FMLA leave time." *Gardner v. Great Lakes Cheese Co., Inc.*, No. 1:10 CV 183, 2011 WL 6749795, *5, (N.D. Ohio Dec. 22, 2011) (citing The Family Medical Leave Act of 1993 Recordkeeping Requirements, 29 C.F.R. § 825.500 (2013)). Thus, Plaintiff is unable to establish that Defendant AT&T Inc. caused tortious injury to Plaintiff in Ohio and consequently, cannot establish personal jurisdiction under the corresponding portion of Ohio's long-arm statute.

### c. Plaintiff Fails to Establish Ohio Bell is an Agent of AT&T Inc. to Establish Personal Jurisdiction

Plaintiff's argument, that AT&T Inc. is subject to personal jurisdiction in Ohio through the actions of Ohio Bell as AT&T Inc.'s agent, implicates a jurisdictional analysis of whether a parent corporation is subject to general jurisdiction based on activities of its subsidiary. Several

circuit courts, including the Sixth Circuit, have recognized that "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)(collecting cases)). During such parent-subsidiary relationship analyses, courts will apply the alter-ego theory of personal jurisdiction. *Id.* The alter-ego theory of personal jurisdiction in the context of parent-subsidiary relationships provides that "a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Id.* (quoting *Danton v. Innovative Gaming Corp.*, 246 F.Supp.2d 64, 72 (D. Me. 2003) (providing several cases Sixth Circuit district court cases which have endorsed the use of the alter-ego theory to exercise personal jurisdiction in the parent-subsidiary context).

In order to apply the alter-ego theory of personal jurisdiction, the Court must consider Ohio's alter-ego test. Ohio courts have considered the following factors in determining whether a subsidiary is an alter-ego of the parent corporation, whether: (1) corporate formalities are observed; (2) corporate records are kept; and (3) the corporation is financially independent. *Id.* (citing *Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05CV2205, 2006 WL 2225821, \*6, 2006 U.S. Dist. LEXIS 53397 (N.D. Ohio Aug. 2, 2006)). Furthermore, the Sixth Circuit has considered additional factors: (1) sharing the same employees and corporate officers;

10

(2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation. *Id.* While Plaintiff's Complaint alleges that many of these factors are satisfied, Plaintiff cannot "merely stand on his pleadings" in order to sufficiently establish his prima facie showing of personal jurisdiction. *Theunissen,* 935 F.2d at 1458. Plaintiff is required to provide written materials and affidavits which establish the facts giving rise to his prima facie showing of personal jurisdiction. The most significant written materials relied upon by Plaintiff in support of establishing personal jurisdiction for AT&T Inc. under the alter-ego theory are: (1) Plaintiff's FMLA internal investigation documentation with an AT&T Inc. header; (2) a press release indicating AT&T's $225 million investment in its Ohio market; (3) internet information regarding Lori Lee as the Senior Executive Vice President of Home Solutions for AT&T; (4) AT&T Inc.'s SEC prospectus and annual investor reports; and (5) a letter which Plaintiff was allegedly required to sign to come back to work following his FMLA leave in which George Ron Williams is identified as Asset Protection Manager working for AT&T Inc.

As discussed earlier, Plaintiff and Defendant have presented conflicting information regarding the actual employer of Lori Lee. However, as stated above, the Court must construe the written materials in the light most favorable to the Plaintiff. Even where the officers and directors of a subsidiary and parent corporation overlap, that factor alone is not enough to warrant a finding that the subsidiary is an alter-ego of the parent corporation. *Invacare Corp. v. Sunrise Med. Holdings, Inc.*, 2004 U.S. Dist. LEXIS 28169, *26 (N.D. Ohio Dec. 15, 2004). *See also Matthews v. Kerzner Int'l* 2011 U.S. Dist. LEXIS 124727, *12-13; 2011 WL 5122641 (N.D.

Ohio Oct. 27, 2011) (citing *United States v. Bestfoods*, 524 U.S. 51, 69, 118 S. Ct. 1876, 141 L. Ed.2d 43 (1998)). Thus, assuming Lori Lee is a common employee of AT&T Inc. and one or more of AT&T Inc.'s subsidiaries, that is still not enough for the Court to find that any AT&T Inc. subsidiary is acting as an alter-ego of AT&T Inc.

Similarly, Plaintiff cannot demonstrate that based on AT&T Inc.'s financial reports, since AT&T Inc. wholly owns AT&T Services, Inc. and Ohio Bell, that AT&T Inc. is subject to personal jurisdiction based solely on those relationships. Plaintiff provides the FMLA documentation of AT&T Inc. in relation to this suit and AT&T Inc. financial reports to presumptively establish a blurring of corporate formalities, exercise of control by the parent company over the subsidiary's daily affairs and sharing of assets. However, the Court has previously recognized that the "fact that the stock of the subsidiary was held by the foreign corporation and that the foreign corporation exercised control over the subsidiary through ownership of the stock, the corporate identity being formally preserved, is not sufficient to subject such foreign corporation to the jurisdiction of the state court." *Matthews v. Kerzner Int'l* 2011 U.S. Dist. LEXIS 124727, *12-13; 2011 WL 5122641 (N.D. Ohio Oct. 27, 2011) (quoting *Rucker v. Personal Finance Co. of Columbus*, 86 Ohio App. 110, 90 N.E.2d 428, 430-312 (Ohio Ct. App. 1948). In fact, the Court previously found that even where the parent corporation and subsidiary share the same business, phone line and address and where the parent has no employees, "while [the facts] weigh in favor of [plaintiff's] alter-ego theory of jurisdiction, [the facts] fail to sufficiently demonstrate that [the parent and subsidiary] operate, in fact, as one business or are fundamentally indistinguishable." *Microsys Computing, Inc. v. Dynamic Data Systems, LLC.*, No. 05-2205, 2006 WL 2225821, *7 (N.D. Ohio August 02, 2006). Thus,

Plaintiff is required to provide more credible written material to support its alter-ego theory of personal jurisdiction. Plaintiff's arguments that Ohio Bell was acting as the agent, or alter-ego, of AT&T Inc., thus subjecting AT&T Inc. to personal jurisdiction in Ohio, are not sufficiently supported. Plaintiff does not cite sufficient written material to support his allegation that the operation of AT&T Inc., AT&T Services, Inc. and Ohio Bell are fundamentally indistinguishable. Therefore, Plaintiff is not able to establish a prima facie showing of personal jurisdiction satisfying Ohio's long-arm statute.

Since Ohio's long arm statute does not extend to the constitutional limits of personal jurisdiction required under the Constitution's Due Process clause, determining Ohio's long-arm statute becomes a threshold jurisdictional issue. Since Plaintiff is unable to satisfy the requirements of Ohio's long-arm statute for personal jurisdiction, it is not necessary for the Court to evaluate AT&T Inc.'s personal jurisdiction under the Constitution's Due Process Clause. Accordingly, Defendant AT&T Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

IT IS SO ORDERED.

 /S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge