UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGG GARLOCK, | ) | CASE NO.1:13CV2200 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| THE OHIO BELL TELEPHONE CO. | ) | <u>OPINION AND ORDER</u> |
| INC., ET AL., | ) | |
| | ) | |
| Defendant. | ) | |

<u>CHRISTOPHER A. BOYKO, J:</u>

This matter is before the Court on Defendants Ohio Bell and At & T Services, Inc.'s Motion for Summary Judgment (ECF # 38). For the following reasons, the Court grants in part, and denies, in part, Defendants' Motion.

<u>Procedural History</u>

On October 4, 2013, Plaintiff Gregg Garlock filed his Complaint with this Court alleging Family Medical Leave Act ("FMLA") Interference and Retaliation claims, Disability Discrimination under Ohio and federal law and Denial of Reasonable Accommodation claims under Ohio and federal law. On November 13, 2013, Plaintiff filed a First Amended Complaint removing a number of AT & T related entities and adding a new Defendant, AT & T, Inc. AT & T, Inc. was subsequently dismissed out of the case for lack of personal jurisdiction leaving only Ohio Bell and A T & T Services, Inc. as defendants. Defendants now move for summary judgment on all Plaintiff's claims.

<u>Background Facts</u>

According to Plaintiff's First Amended Complaint, Plaintiff was hired by Defendants in 2003 as a Customer Service Specialist.  He held this position until 2010 when he became a U-Verse Premise Technician, often working sixty hours a week.  Sometime in 2011, Plaintiff began to experience panic attacks brought on by stress.  In April 2011, he was diagnosed with anxiety disorder and in June 2011 he was diagnosed with panic disorder.  Based on the recommendation of his treating medical professional, Plaintiff requested intermittent FMLA leave and accommodation in the form of forty hour work weeks and eight hour work days.  Plaintiff alleges his request for reduced hours was denied.

As part of his treatment, Plaintiff's treating medical provider instructed Plaintiff to engage in whatever activity reduced his stress while on FMLA leave in order to prevent panic level anxiety.  Plaintiff plays drums in a band and finds it helps reduce his stress levels.  While on FMLA leave, Plaintiff played drums with his band.  Plaintiff took FMLA leave during the months of June through October 2011.  In October 2011, Plaintiff learned Defendants investigated his FMLA leave.  Having discovered Plaintiff was playing in his band while out on FMLA leave during the July 4th weekend, Defendants suspended Plaintiff in November 2011.  Defendants held a hearing on Plaintiff's FMLA leave activities on November 23, 2011.  After the hearing, Plaintiff was suspended for ten days without pay and was forced to sign a Back to Work/Last Chance agreement.  In February 2012, Plaintiff was fired for entering boilerplate emails for customers and billing customers for work the customers did not approve.  According to Plaintiff, this was pretextual since other employees, including Plaintiff, had made these types of entries in the past and were not disciplined.

**Defendants' Motion for Summary Judgment**

According to Defendants, Plaintiff's claims fail because he cannot demonstrate that his suspension and ultimate termination were related to his use of protected FMLA leave or to a disability.  Also, Plaintiff cannot show Defendants lacked an honest belief that Garlock twice violated Defendants' workplace rules of conduct or that any other employee who engaged in similar conduct was not treated the same way.  Also, Plaintiff cannot show he was denied any FMLA leave he requested, nor that he requested an accommodation.  Lastly, Plaintiff cannot show he is disabled under the ADA.

## Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hosp. Ass'n*., 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an

element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**FMLA Interference**

The FMLA protects employees who have worked for the same employer for at least one full year and who have provided at least 1,250 hours of service within that time period. 29 U.S.C. § 2611(2)(A). Eligible employees are entitled up to twelve weeks of leave per year if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(D). A "serious health condition," is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). A serious health condition includes chronic conditions which are defined as "any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 CFR 825.115(c).

Plaintiff has pled both an Interference claim under 29 U.S.C. § 2615(a)(1) and a Retaliation claim under 29 U.S.C. § 2615(a)(2), both of which are recognized theories of recovery in the Sixth Circuit for alleged violations of an employee's FMLA rights.  *See Killian v. Yorozu Auto Tenn. Inc.*, 454 F.3d 549, 555 (6th Cir. 2006).

**FMLA Interference**

To establish a prima facie claim for FMLA Interference, Plaintiff must demonstrate: "(1) [s]he was an eligible employee, (2) defendant was a covered employer, (3)[s]he was entitled to leave under the FMLA, (4)[s]he gave defendant notice of [her] intent to take leave, and (5) the defendant denied [her] FMLA benefits or interfered with FMLA rights to which [s]he was entitled." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 482 (6th Cir.2010).

As an initial matter, the parties dispute whether a prima facie FMLA Interference claim can be demonstrated by a showing that plaintiff suffered an adverse employment action or was afraid to request additional FMLA leave due to the adverse employment action by Defendants. Defendants contend Plaintiff must demonstrate denial of an FMLA benefit.  However, the Court agrees with Plaintiff that the Sixth Circuit has not demanded such a narrow showing.   Sixth Circuit precedent asserts:  "We have previously held that "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled."  *Donald v. Sybra, Inc.* 667 F.3d 757, 761 (6th Cir. 2012) citing *Wysong v. Dow Chem. Co.,* 503 F.3d 441, 447 (6th Cir.2007).  "As this Court noted very recently, ... a claim for FMLA-related discharge can sound

in either theory... *Jaszczyszyn v. Advantage Health Physician Network*, 504 Fed.Appx. 440, 447, 2012 WL 5416616, 6 (6th Cir. 2012). Here, Defendant suspended Plaintiff ten days without pay and required him to sign a last chance agreement for allegedly abusing FMLA leave. Thus, the law of this Circuit allows an FMLA Interference claim to proceed even if Plaintiff received all the leave he or she requested, so long as Plaintiff can show Defendant took an adverse employment action based on Plaintiff's use of the leave. "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong v. Dow Chemical Co.* 503 F.3d 441, 447 (6th Cir. 2007). This presents a sufficient claim for FMLA Interference under applicable Sixth Circuit law.

Defendants next contend Plaintiff cannot demonstrate a prima facie FMLA Interference claim because he cannot show he was incapacitated on July 3rd of 2011, therefore, he cannot show he was entitled to take FMLA leave on that day. Furthermore, if Plaintiff was not entitled to take FMLA leave on July 3rd 2011, Defendants' subsequent adverse employment actions did not deny or interfere with Plaintiff's FMLA benefits. Under the applicable regulations "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). Defendants contend Plaintiff's testimony supports the conclusion that he took the time off to destress, not because he was incapacitated and therefore was not entitled to leave. Furthermore, the July 2nd and 3rd performances of his band were booked months in advance. Plaintiff's work schedule would not have permitted him to both work his scheduled work days and perform with the band. According to Defendants, this was a simple decision by Plaintiff to

6

perform rather than work, therefore, Plaintiff was not incapacitated to work on these days and he was not entitled to FMLA leave.

Plaintiff testifies that he was incapable of working the July 4th weekend because of his anxiety, stress, fatigue and panic attacks.  Defendants undoubtedly approved his use of FMLA intermittent leave due to his panic and anxiety disorders.  However, the factual nature of Plaintiff's incapacity at the time of his FMLA leave, which requires medical testimony, militates against summary judgment.  This determination will be dispositive of the claim since the very reason Defendant suspended Plaintiff relates directly to his alleged abuse of FMLA leave. Because Defendant took adverse employment actions against Plaintiff  in the form of suspension without pay and requiring he sign a last chance agreement for his alleged abuse of FMLA leave, Plaintiff's FMLA Interference claim presents issues of fact not suitable for summary judgment. Because his termination was, in part, related to his signing of the last chance agreement, summary judgment is denied on his FMLA Interference claim for unlawful termination.

**FMLA Retaliation**

"To establish a claim of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, i.e. notifying the defendant of her intent to take leave under the FMLA; (2) she suffered an adverse employment action[;] and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action.  (Internal citation omitted).   "If a plaintiff's claim is based on circumstantial evidence, *McDonnell Douglas Corp. v. Green* 's burden-shifting analysis applies." *Judge v. Landscape Forms, Inc.* 592 Fed.Appx. 403, 408 -409 (6th Cir. 2014) citing 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Once Plaintiff establishes its prima facie case, "[t]he burden then shifts to the defendant to articulate

7

some legitimate, nondiscriminatory reason for terminating the plaintiff.  The plaintiff then has the burden of showing that the defendant's reasons are merely a pretext for discrimination. *Judge*, 592 Fed. Appx. at 408-409.

Regarding Plaintiff's suspension, last chance agreement and termination, the Court finds factual disputes whether Plaintiff's use of FMLA over the July 4, 2011 weekend was a legitimate use of FMLA leave.  Plaintiff expressly alleges his suspension and termination were due to his lawful use of FMLA leave.   Since there is no question his suspension and last chance agreement were directly related to his use of FMLA leave, there is a genuine dispute of fact whether Defendants adverse employment actions in suspending without pay and forcing Plaintiff to sign a last chance agreement were in retaliation for his exercise of FMLA leave.

Furthermore, the reason for Plaintiff's termination presents issues of fact.  First, Plaintiff's termination was at least, in part, based on a  last chance agreement that itself was imposed due to his alleged improper use of FMLA leave in July 2011.  That such use was improper has already been determined to be an issue of fact.

Defendants have offered legitimate non-FMLA related reasons for Plaintiff's suspension, last chance agreement and termination.  Defendants dispute the legitimacy of Plaintiff's FMLA leave on July 3rd.   Defendants also point to his violations of the last chance agreement and Code of Business Conduct by falsifying invoices and billing for work that customers never approved.  Especially in light of the last chance agreement, Defendants have articulated a legitimate, non retaliatory reason for the adverse actions.   Thus, Plaintiff must show these reasons to be mere pretext.  In order to prove pretext, a plaintiff must set forth more than a dispute over the facts upon which her discharge was based.  *Braithwaite v. Timken Co.,* 258 F.3d

488, 493–94 (6th Cir.2001).  Instead, the plaintiff must "put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action." *Id.* at 494.[1]  "In order to determine whether the employer had an 'honest belief,' it is necessary to consider whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Hodges v. City of Milford*, 918 F.Supp.2d 721, 739 -740 (S.D. Ohio 2013), citing *Braithwaite,* 258 F.3d at 494.  In *Smith v. Chrysler,* 155 F.3d 799, 807 (6th Cir.1998), the Sixth Circuit provided the following guidance for courts considering whether an employer's proffered non-discriminatory reason for an adverse employment action was based on an honest belief.  When "deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned.  Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  Courts may not second guess the business judgment of an employer but must instead determine "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.,* 355 F.3d 444, 462 (6th Cir.2004).

Here, even if Plaintiff could demonstrate he was entitled to FMLA leave the July 4th weekend, Plaintiff has not offered any evidence indicating a retaliatory animus by Defendants, nor has he produced evidence creating a genuine issue of fact on Defendants' honest belief Plaintiff was abusing FMLA leave.  Defendants can show an honest belief he was abusing leave

---

[1] The "honest belief" defense is available to a defendant in an FMLA Retaliation claim.  The Sixth Circuit has not recognized its applicability to FMLA Interference and this Court will not extend it to encompass such a claim.

sufficient to warrant suspension and signing a last chance agreement. First, Defendants relied on the following particularized, undisputed facts:

1) Plaintiff, while allegedly too incapacitated for work, played drums with his band on the days he took FMLA leave.

2) Plaintiff's band is paid to perform.

3) Plaintiff's band had booked the July 4th weekend performances months in advance.

4) Plaintiff could not have worked his scheduled job and performed with his band on July 3rd since he was scheduled to work that day from 9:00 am to 8:00 pm while his band was scheduled to perform July 3rd at 11:30 am.

5) Plaintiff called off work on July 1st, one day before he was scheduled to work July 2nd and two days before he was scheduled to work July 3rd.

6) Defendants photographed Plaintiff playing drums with his band on the day he was too incapacitated to work.

7) Defendants retained an independent medical professional to opine on whether Plaintiff's playing drums was consistent with his FMLA approved leave. That professional, Dr. Reff, opined Plaintiff's performing with a band for an audience was not consistent with his FMLA approved leave nor was it consistent with incapacity.

Based on the above particularized facts, Defendants have shown an honest belief that Plaintiff abused his FMLA leave on July 3rd, 2011 and Defendants adverse actions of suspension without pay and requiring Plaintiff sign a last chance agreement were not the product of

unlawful retaliation for using FMLA leave.

Furthermore, because Plaintiff was subject to a last chance agreement based on Defendants' honest belief, Plaintiff's invoicing issues, which he does not deny, warranted dismissal.  Plaintiff has pointed to no comparator who engaged in such invoicing issues while subject to a last chance agreement who was treated differently.  Therefore, Plaintiff has not shown pretext and Defendants are entitled to summary judgment on Plaintiff's FMLA Retaliation claim.

**Plaintiff's ADA and Ohio law disability discrimination and failure to accommodate claims**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a).  The statute defines "discriminate" to include "not making reasonable accommodation to the known physical ... limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship." *Id.* § 12112(b)(5)(A).  An "otherwise qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).  *See also Rorrer v. City of Stow* 743 F.3d 1025, 1038 (6th Cir. 2014).

A Plaintiff asserting a claim under the ADA may establish discrimination either by direct or indirect evidence.  In a failure to provide reasonable accommodation claim, "failing to make a reasonable accommodation falls within the ADA's definition of "discrimination."  Accordingly, claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Kleiber v. Honda of America Mfg., Inc*. 485 F.3d 862, 868 (6th Cir. 2007).  "In order to establish a *prima facie* case

of disability discrimination under the ADA for failure to accommodate," a plaintiff "must show that: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Melange v. City of Center Line* 482 Fed.Appx. 81, 84 (6th Cir. 2012), citing *Johnson v. Cleveland City Sch. Dist.*, 443 Fed.Appx. 974, 982–83 (6th Cir. 2011).

A claim for failure to provide reasonable accommodation under Ohio law is analyzed similarly to a claim brought under the ADA. *Rhoads v. Board of Educ. of Mad River Local School Dist*. 103 Fed.Appx. 888, 891  (6th Cir. 2004). ("As a general matter, Ohio courts look to federal regulations and case law interpreting the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101—12203, for guidance when applying Ohio disability discrimination laws,") citing *City of Columbus Civil Serv. Comm'n v. McGlone,* 82 Ohio St.3d 569, 697 N.E.2d 204, 206–07 (1998).

Here, Plaintiff contends he is disabled under the ADA based on his diagnoses of anxiety and panic disorders by Dr. Laura DeHelian, a Board Certified psychiatric mental health clinical nurse specialist.  The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;  (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  It further defines "major life activity" to include: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  Major life activity

12

may also include " the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C.A. § 12102(1) and (2).

In 2008, Congress amended the ADA to "broaden the definition of 'disability.'" *Donald v. Sybra, Inc.* 667 F.3d 757, 764 (6th Cir. 2012). The Amendment contains certain rules of construction which include the requirements that the term "disability"

> "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter. The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008. An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability. An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as-- ...
>     (III) reasonable accommodations or auxiliary aids or services...

42 U.S.C. § 12102(4).

The EEOC Regulations provide that an impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

According to the ADA, reasonable accommodation means:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9).

13

*Tubbs v. Formica Corp.* 107 Fed.Appx. 485, 488, 2004 WL 1791405, 2 (6th Cir. 2004)

Plaintiff argues that his disability substantially limits his ability to work, think and interact with others.  In support of this argument Plaintiff offers the deposition of Dr. DeHalian wherein she states that Plaintiff was mentally incapable of working overtime without suffering "panic attacks, nightmares, insomnia, sense of impending doom and feeling overwhelmed." (DeHalian depo. Pgs. 82-83).  In his statement to Defendants Review Board, Plaintiff stated that his anxiety was "debilitating" and prevented him from "functioning normally."  (Garlock Statement (ECF 36-1).

Defendants contend Plaintiff's anxiety and panic disorders did not limit a major life activity.  Defendants argue that Plaintiff's work history does not support his contention that he suffers from a disability under the ADA, as he was undisputedly able to work full time for a number of years.  Defendants further cite to the Sixth Circuit's holding in *Cotter v. Ajilon Services, Inc.* 287 F.3d 593, 598 (6th Cir. 2002)(reversed on other grounds), wherein the Court held  " ...an inability to work overtime is not a substantial limitation on the ability to work." Defendants cite to a number of cases within this Circuit that reached the same conclusion. *Linser v. Dep't of Mental Health*, 2000 U.S. App. LEXIS 25644 (6th Cir. Oct. 6, 2000); *Mays v. Am. Elec. Power*, 2010 U.S. Dist. LEXIS 96369, *18-19 (S.D. Ohio Sept. 15, 2010); *Eibest v. Planned Parenthood*, 94 F. Supp. 2d 873, 877-878 (N.D. Ohio 2000).   All stand for the proposition that an employee who is able to work full time, is not substantially limited under the ADA in the major life activity of working.   In spite of the amendments to the ADA, the Court finds the amendments do not negate the Sixth Circuit's holding.  The undisputed evidence before the Court is that Plaintiff could and did work full time which is sufficient to show he was not

disabled due to his inability to work overtime.

Although Plaintiff has not satisfied his prima facie burden to show he is disabled due to an inability to work overtime, Plaintiff also alleges he was substantially limited in other aspects of his life, including sleeping, thinking and interacting with others.  Plaintiff was being treated by Dr. Dehalian for insomnia and nightmares and received medication to treat this condition. (Dehalian depo. Pg. 59-64).  He further alleges his panic attacks affected his ability to think and interact with others.  These alleged impairments present issues of fact whether Plaintiff was disabled under the ADA sufficient to overcome Defendants Motion for Summary Judgment on Plaintiff's ADA Accommodation claim.

Defendants next argue Plaintiff never requested an accommodation.  The only notice of an accommodation was contained in Dr. DeHalian's FMLA medical certificate.  Plaintiff was not even aware that Dr. DeHalian included such a request in the FMLA certificate.  "The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations." *Johnson v. Cleveland City School Dist.* 443 Fed.Appx. 974, 983, 2011 WL 5526465, 8 (6th Cir. 2011).  "There is no question that the EEOC has placed the initial burden of requesting an accommodation on the employee."  *Gantt v. Wilson Sporting Goods Co.* 143 F.3d 1042, 1046 - 1047 (6th Cir. 1998).  Once the employee requests an accommodation, the employer has a duty to engage in an "interactive process" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 871 (6th Cir.2007) (internal quotation marks omitted). "But if the employee never requests an accommodation, the employer's duty to engage

15

in the interactive process is never triggered." *Melange v. City of Center Line* 482 Fed.Appx. 81, 84-85,(6th Cir. 2012).

Here, Plaintiff contends Dr. Dehalian filled out AT & T's Certification of Health Care Provider Form in support of Plaintiff's request for FMLA leave. There is no dispute the form was provided to Defendants multiple times. That form clearly stated Plaintiff could not work more than eight hours in a day nor could he work more than forty hours in a week. Defendants argue that this form fails to satisfy Plaintiff's obligation to inform Defendants of his need for an accommodation because it failed to comply with Defendants own accommodation request procedure. The Court disagrees. "The employee need not invoke the ADA to be requesting an accommodation under it. 'What matters under the ADA are not formalisms about the manner of the request, but whether the employee ... provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.'" *Pearson v. Cuyahoga County Executive* 2014 WL 517501, (N.D.Ohio,2014) (reversed in part on other grounds) *White v. Honda of America Mfg., Inc.,* 191 F.Supp.2d 933, 950, (S.D.Ohio 2002). Thus, notice of a need for accommodation need not conform to a particular formula, rather it need only sufficiently inform an employer of a disability and the need for an accommodation. Dr. DeHalian's Certificate provides adequate notification of both Plaintiff's disability and the particular accommodation he required. This was enough to put Defendants on notice, obliging Defendants to engage in the requisite interactive process. This never happened. Therefore, Plaintiff has made a sufficient showing of notice of an accommodation to satisfy his prima facie burden of notice.

**ADA and Ohio Disability Discrimination**

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to ... the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The Sixth Circuit has used two alternate tests for establishing a prima facie case of ADA discrimination by indirect evidence.  "A prima facie case of discrimination under the ADA requires the plaintiff to show that (1) she is disabled, (2) she is otherwise qualified for the job, with or without reasonable accommodation, and (3) she was discriminated against because of her disability." *Latowski v. Northwoods Nursing Center* 549 Fed.Appx. 478, 486 (6th Cir.,2013), *citing Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1105 (6th Cir.2008).  "The second was a five-factor test that required a plaintiff to show that: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee,* 639 F.3d 253, 259 (6th Cir.2011).

Defendants moved for summary judgment on Plaintiff's disability discrimination claims under both the ADA and Ohio law contending Plaintiff could not meet his prima facie burden to show he was disabled nor could he show pretext.  Regardless of the test to be applied, Plaintiff's opposition brief fails to address or defend these claims.  Under applicable Sixth Circuit precedent these claims are deemed abandoned and summary judgment for Defendants is granted on Plaintiff's ADA and Ohio law disability discrimination claims.  "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of*

17

*Michigan, Inc.* 545 Fed.Appx. 368, 372 (6th Cir. 2013).

Lastly, Defendants move for summary judgment on whether A T & T Services, Inc. was Plaintiff's employer. According to Defendants, A T & T Services, Inc. lacked the ability to hire, fire, control or affect compensation or benefits and direct and supervise performance. A T & T Services, Inc. provided Human Resources, benefits administration and labor relations for Ohio Bell. These are insufficient to qualify A T & T Services, Inc. as a joint employer.

Plaintiff contends Ohio Bell and AT&T Services,Inc. are either integrated employers or acted as each others agents therefore, both may be considered Plaintiff's employers. Furthermore, the Code of Business Conduct and Premises Technician Handbook, both of which set forth rules applicable to Plaintiff, are AT & T documents.

In *Swallows v. Barnes & Noble Book Stores, Inc.* 128 F.3d 990, 993 (6th Cir.1997), the Sixth Circuit outlined three distinct tests for determining whether an entity other than the direct employer of an employee may be considered an employer for purposes of ADA discrimination:

> Although a direct employment relationship provides the usual basis for liability under the ADEA or ADA, courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an "employer" under those statutes. In one approach, courts examine whether two entities are so interrelated that they may be considered a single employer" or an "integrated enterprise. In another approach, courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a "joint employer" of those employees. A third approach examines whether the person or entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer.

Defendants' summary judgment motion only argues a lack of evidence under the joint employer test. Defendants contend Plaintiff was paid solely by Ohio Bell. They further contend that only Ohio Bell controlled Plaintiff's conditions of employment, including determining his

18

discipline, benefits, compensation and hiring and firing decisions.

Plaintiff offers evidence that A T & T Services, Inc. conducts FMLA investigations for Plaintiff; and Ohio Bell consulted with A T & T Services, Inc.'s employees on the decision to discipline Plaintiff.  Placing Plaintiff on a last chance agreement was done by Ohio Bell in consultation with an A T & T manager.  Furthermore, both A T & T Services, Inc. and Ohio Bell employees are subject to the same Code of Business Conduct and share the same parent company.

"In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Id.*

None of the above facts are sufficient to show that A T & T Services, Inc. is an employer of Plaintiff.  The uncontested evidence demonstrates that while AT & T Services, Inc. conducts the FMLA abuse investigation, it simply turns the results over to Ohio Bell, leaving the determination of what, if any, discipline should be imposed to Ohio Bell.  Sharing a Code of Business Conduct and having another entity manage human resource administration without more is insufficient to satisfy any of the joint, integrated or agency employment tests.  In short, there is no evidence AT & T Services, Inc. exercised any control over Plaintiff's working conditions, compensation, hiring or firing.  There is no evidence to show interrelation such that AT & T Services, Inc. could be considered an employer of Plaintiff as there is no evidence that the companies shared offices, equipment, or bank accounts; only that AT&T Services, Inc.

provided human resources, benefits administration and labor counseling.  There is no evidence that the two entities shared common directors, officers or boards.  While there is evidence that they are both subsidiaries of AT & T, Plaintiff merely states this without pointing the Court to any evidence over the degree of control AT & T exerts over its subsidiaries.  "Finally, as to the fourth factor, there is no evidence of common ownership or financial control.  If neither of the entities is a sham then the fourth test is not met." *Swallows*, 128 F.3d at 995.

Lastly, conducting an FMLA investigation without authority to impose consequences for its findings is insufficient to show an agency relationship subjecting AT & T Services, Inc. to liability as it did not have the authority to impose an adverse employment action on Plaintiff.  Therefore, Defendant is entitled to summary judgment that AT & T Services, Inc. is not an employer of Plaintiff.

Therefore, for the foregoing reasons, the Court denies Defendants' Motion for Summary Judgment on Plaintiff's FMLA Interference and ADA Accomodation claims, and grants Summary Judgment for Defendants on Plaintiff's FMLA Retaliation, ADA and Ohio Disability Discrimination claims and grants summary judgment for AT & T Services, Inc. on all Plaintiff's claims, finding it was not Plaintiff's employer.

IT IS SO ORDERED.

                                                 s/ Christopher A. Boyko
                                                 CHRISTOPHER A. BOYKO
Dated:  September 29, 2015        United States District Judge